# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Oct 29 2012, 8:30 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHILOH JONES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1202-CR-74 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara A. Collins, Judge
The Honorable John J. Boyce, Judge Pro Tempore
Cause No. 49F08-1104-FD-26230

**October 29, 2012**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Shiloh Jones ("Jones") appeals his convictions and sentence for domestic battery[1] as a Class D felony, strangulation,[2] a Class D felony, criminal confinement[3] as a Class D felony, domestic battery[4] as a Class A misdemeanor, battery[5] as a Class A misdemeanor, and interference with reporting a crime[6] as a Class A misdemeanor. On appeal, we address the following issues:

I.   Whether Jones's notice of appeal was timely filed;

II.  Whether Jones's multiple convictions for battery violate Indiana's constitutional prohibition against double jeopardy;

III. Whether Jones's criminal confinement conviction violates Indiana's constitutional prohibition against double jeopardy;

IV.  Whether the presiding judge had the authority to vacate the sentence ordered by the judge pro tempore; and

V.   Whether the prosecutor committed misconduct by vouching for the complaining witness's credibility by assuring jurors during the closing argument that she was telling the truth.

We affirm in part, reverse in part, and remand.

**FACTS AND PROCEDURAL HISTORY**

In April 2011, Jones, his girlfriend R.O., and their two children, both of whom were under two years of age, lived together in a house in Indianapolis. During the

---

[1] *See* Ind. Code § 35-42-2-1.3.

[2] *See* Ind. Code § 35-42-2-9.

[3] *See* Ind. Code § 35-42-3-3.

[4] *See* Ind. Code § 35-42-2-1.3.

[5] *See* Ind. Code § 35-42-2-1.

[6] *See* Ind. Code §35-45-2-5.

afternoon of April 13, 2011, Jones and R.O. got into an argument about housework and child care responsibilities. A short time later, the verbal altercation became physical; Jones poured baby formula on R.O.'s face, slapped and bit her face, and choked her. *Tr.* at 34. Jones also pushed R.O. down on the couch, sat on her, and told her she couldn't leave. *Id.* R.O. took their one-year-old child into the couple's bedroom, but Jones "told [R.O.] to come out of the room[,] . . . grabbed [her] by the hair and snatched [her] out of the room . . . draggin' from the floor onto the livin' room [sic] . . . ." *Id.* at 36. At various times thereafter, Jones slapped, pushed, and choked R.O. while the couple's two children were in the room. *Id.* at 37. As the two tussled, Jones threw R.O. down to the floor and her knee "busted a little bit to where [her] skin had broke." *Id.* at 40. At one point Jones also bit R.O. on the side of her face. *Id.* at 47. R.O. estimated that the entire episode lasted "between four and like eight o'clock," *id.* at 83, after which Jones took R.O.'s cell phone and went outside to his vehicle. R.O. looked for the two cordless phones that were usually in the house, but could not find either of them. *Id.* 43-44. That night, Jones slept in the living room, and R.O. slept in the bedroom with the two children.

When Jones left the house around 8:30 the next morning, R.O. called a family member and later called the police. The State arrested Jones and charged him with domestic battery as a Class D felony; strangulation, a Class D felony; criminal confinement as a Class D felony; domestic battery as a Class A misdemeanor; battery as a Class A misdemeanor; and interference with reporting a crime as a Class A misdemeanor.

Jones was tried to a jury in the courtroom of the Honorable Barbara A. Collins.

3

On November 14, 2011, Commissioner John J. Boyce was appointed judge pro tempore and presided over Jones's trial. *Appellant's App.* at 134. During closing argument, the deputy prosecutor asserted that R.O. had no reason to falsify her testimony and stated, "[S]he's still here because it's the right thing and she was telling you the truth." *Tr.* at 159. Jones was convicted on all six counts. On November 28, 2011, Commissioner Boyce sentenced Jones to two years on each felony count and one year on each misdemeanor count with all sentences to be served concurrently. Jones's two-year sentence was ordered to be served as follows: twelve months at the Department of Correction ("DOC"), six months on Community Corrections, and six months to be suspended and served on probation. *Tr.* 314-16.

Jones's sentencing was complicated by the trial court's need to address a probation violation from a previous conviction. During a December 12, 2011 hearing, the trial court noted, "[t]here are some things that happened in the sentencing which couldn't happen, okay, without at least some more evaluations and that's what's going to happen today, it's going to be a Community Corrections evaluation and then the sentencing is going to [be] redone." [7] *Tr.* at 370. "I have to take into consideration everything, your past in your probation case, your presentence investigation and this new evaluation. They're going to be looking at your mental health . . . ." *Id.* at 371. The trial court set a second sentencing hearing.

On January 24, 2012, Judge Collins conducted a second sentencing hearing, which

---

[7] Although the court reporter's transcript of proceedings reflects that the hearing was taken on December 12, *2012*, *tr.* at 368, the CCS correctly reflects the date as December 12, *2011*. *Appellant's App.* at 15.

resulted in what is referred to in the CCS as "amended sentencing." *Appellant's App.* at 16. Jones was sentenced to 730 days at the DOC on each felony count and 365 days at the DOC on each misdemeanor count with all sentences to run concurrently. *Id.* at 16-17, 19-20. Jones now appeals.

## DISCUSSION AND DECISION

### I. Timeliness of Filing Notice of Appeal

As a preliminary matter, we address the State's contention that Jones's appeal was not timely filed. Commissioner Boyce presided over Jones's jury trial, held on November 14, 2011, and his sentencing hearing, held on November 28, 2011. The State contends that because Commissioner Boyce served as a judge pro tempore for the trial and the sentencing hearing, the sentence imposed on November 28, 2011 constituted a final appealable order. *Appellee's Br.* at 7.[8]

"A party initiates an appeal by filing a Notice of Appeal with the Clerk . . . within thirty (30) days after the entry of a Final Judgment is noted in the Chronological Case Summary. . . ." Ind. Appellate Rule 9(A)(1). The State contends that the thirty days ran from November 28, 2011 and expired in December 2011. As such, the State argues that Jones's notice of appeal, which was filed February 16, 2012, was untimely filed. We disagree.

A notice of appeal must be filed "with the Clerk . . . within thirty (30) days after the entry of a Final Judgment *is noted in the* [*CCS*]." App. R. 9(A)(1) (emphasis added).

<hr />

[8] The State filed its Appellee's Brief on August 13, 2012. Thereafter this court granted the State's motion to amend the Appellee's Brief to include a previously omitted page, and the State filed its Amended Brief of Appellee on August 17, 2012. For ease of reference, we refer to the Amended Brief of Appellee as *Appellee's Br.*

Here, the trial court did not issue an "Order of Judgment of Conviction" until January 24, 2012. *Appellant's App.* at 21-24. While the CCS reflects that a hearing occurred on November 28, 2011 for sentencing, on December 5, 2011 for a bond review, and on January 24, 2012 for sentencing, the CCS reflects that the "Order of Judgment of Conviction" was entered only on January 24, 2012. *Appellant's App.* at 14-15, 21. Jones's notice of appeal, which was filed less than thirty days after the entry of final judgment was noted in the CCS, was timely filed. *Id.* at 21-24.

## II.    Battery and Double Jeopardy

Jones contends that his multiple convictions for battery violate Indiana's constitutional prohibition against double jeopardy. Specifically, he contends that he cannot be convicted for domestic battery as a Class D felony (Count I), domestic battery as a Class A misdemeanor (Count IV), and battery as a Class A misdemeanor (Count V) because "the evidence presented supports but a single offense of domestic battery." *Appellant's Br.* at 7. Jones bases his claim on the "actual evidence test" enunciated by the Indiana Supreme Court in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999) and on the fact that Counts IV and V are each a lesser-included offense of Count I. *Appellant's Br.* at 5-8. *Davenport v. State*, 734 N.E.2d 622, 624 (Ind. Ct. App. 2000) (greater offense is the "same" for purposes of double jeopardy as any lesser offense included in it) (citing *Brown v. Ohio,* 432 U.S. 161, 168 (1977)), *trans. denied* (2001). We review whether multiple convictions violate the prohibition against double jeopardy *de novo. Goldsberry v. State,* 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

The State fails to address this issue. Relying on its argument that Jones's appeal

6

was untimely filed, the State offers just one sentence: "Defendant's double jeopardy claim, even if correct, would only require this Court to vacate the misdemeanor battery convictions, . . . but as all counts were ordered to be served concurrently, such would have no effect on Defendant's actual sentence." *Appellee's Br.* at 8. This court will not undertake the burden of developing an argument on behalf of a party on appeal. *Hall v. State*, 837 N.E.2d 159, 160 (Ind. Ct. App. 2005), *trans. denied* (2006). Nonetheless, it is our duty to decide cases correctly. Because this issue was raised by Jones and is properly before us and because our standard of review is *de novo*, we address the merits of Jones's double jeopardy claim.

The Indiana Constitution's Double Jeopardy Clause ("the Double Jeopardy Clause"), found in Article 1, Section 14 of the Indiana Constitution, "was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson,* 717 N.E.2d at 49. Two or more offenses are the "same offense" in violation of the Double Jeopardy Clause, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Id.*

Under the "actual evidence" test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense

7

may also have been used to establish all of the essential elements of a second challenged offense. *Spivey v. State,* 761 N.E.2d 831, 833 (Ind. 2002). To determine what facts were used, we consider the evidence, charging information, final jury instructions, and arguments of counsel. *Rutherford v. State,* 866 N.E.2d 867, 871 (Ind. Ct. App. 2007).

The pertinent portions of each charging information and each final instruction to the jury relating to the battery counts were as follows. As to Count I, domestic battery as a Class D felony, the State alleged that Jones:

> *did knowingly in a rude, insolent or angry manner touch [R.O.], another person,* who . . . is or was living as if a spouse of the Defendant, or has a child in common with the Defendant, and further that *said touching resulted in bodily injury to the other person, specifically red marks and/or scratches and/or pain*; and further, the [D]efendant committed said act in the physical presence of . . . a child less than sixteen (16) years of age, knowing that said child was present and might be able to see or hear the offense.

*Appellant's App.* at 28, 108 (emphasis added). As to Count IV, domestic battery as a Class A misdemeanor, the State alleged that Jones:

> *did knowingly in a rude, insolent or angry manner touch [R.O.], another person*, who . . . is or was living as if a spouse of the Defendant, or has a child in common with the Defendant; and further that *said touching resulted in bodily injury to the other person, specifically: red marks and/or scratches and/or pain.*

*Id*. at 31, 111 (emphasis added). Finally, as to Count V, battery as a Class A misdemeanor, the State alleged that Jones:

> *did knowingly in a rude, insolent or angry manner touch [R.O.], another person*, and further that *said touching resulted in bodily injury to the other person, specifically: red marks and/or scratches and/or pain.*

*Id*. at 32, 112 (emphasis added). As the emphasized language reveals, the State provided

8

no details regarding the three batteries, but instead, alleged in general terms that Jones "did knowingly in a rude, insolent or angry manner touch" R.O., and that "said touching resulted in bodily injury to the other person, specifically:  red marks and/or scratches and/or pain."  *Id*. at 28, 31, 32.  Here, there is a reasonable possibility that each challenged battery offense was not established by separate and distinct facts.

In closing argument, the State revealed its understanding of how these three counts were different.  The attorney for the State noted:

> I didn't mention in the D felony battery charge that it must be . . . in the presence of a child, we talked about it during jury selection, that the State treats the crime of battery in front of a child differently than it does a battery without children present, we all agreed that was legal and that was an appropriate way to treat this charge and that is all, that's the only reason that there is any difference between the A misdemeanor battery, which happened outside the presence of the children in the living room and the one that happened with the children, you know, in front of the children in the bedroom so I just ask you to keep that in mind.

*Tr*. at 159.  The State claimed that the difference in proof between these three batteries was whether the battery occurred *in front of the children* in the bedroom or *outside the presence of the children* in the living room.  The State, however, was incorrect in its assertion.  In *True v. State*, our court addressed what it means for a domestic battery to occur in the presence of children by stating:

> If the jury were to find the battery did not occur in the presence of children merely because none of the children *saw* the battery, that would represent a misunderstanding of what the statute requires.  "Presence" is defined as knowingly being within either the possible sight *or hearing* of a child.  I.C. § 35–42–2–1.3(b)(2).  And, if the State's evidence here was to be believed, G.T. and A.F. unquestionably heard the confrontation between A.T. and True.  In any event, none of the children had to actually sense the battery; there only needed to be the possibility that they "might" see or hear it.  *See Boyd v. State,* 889 N.E.2d 321, 325 (Ind. Ct. App. 2008), *trans. denied.*

9

*True v. State*, 954 N.E.2d 1105, 1110-11 (Ind. Ct. App. 2011). Based on the above reasoning, we find a violation of the prohibition against double jeopardy because Counts IV and V are lesser included offenses of Count I and because the State relied on the same evidence to convict Jones of all three offenses.

When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. *Moala v. State,* 969 N.E.2d 1061, 1065 (Ind. Ct. App. 2012). If it will not, one of the convictions must be vacated. *Id.* "In the interest of efficient judicial administration, the trial court need not undertake a full sentencing reevaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate." *Id.* (citing *Richardson,* 717 N.E.2d at 54). In *Richardson*, the defendant was convicted of robbery as a Class C felony and battery as a Class A misdemeanor, which our Supreme Court found to be a violation of the Indiana Double Jeopardy Clause under the actual evidence test. *Richardson,* 717 N.E.2d at 54. Because both convictions could not stand, the court in *Richardson* vacated the conviction with the less-severe penal consequence and left the robbery conviction standing. *Id.* at 55.

Jones was convicted in violation of Article 1, section 14, of Class D felony domestic battery, Class A misdemeanor domestic battery, and Class A misdemeanor battery. The two Class A misdemeanor battery convictions have the less-severe penal consequences. Accordingly, we vacate both the convictions and sentence for the Class A

10

misdemeanor domestic battery (Count IV) and for the Class A misdemeanor battery (Count V), and leave standing the conviction and sentence for Class D felony domestic battery (Count I).

### III.    Criminal Confinement and Double Jeopardy

Jones next contends that his conviction for criminal confinement violates the prohibition against double jeopardy set forth in Indiana Constitution, Article 1, Section 14.  Jones again bases his claim on the "actual evidence test" enunciated by the Indiana Supreme Court in *Richardson*, and the State again fails to make an argument as to why Jones's conviction for criminal confinement does not constitute double jeopardy.[9]  We review the claim of double jeopardy *de novo*.  *Goldsberry,* 821 N.E.2d at 458.

To support his argument, Jones cites to *Cunningham v. State*, 870 N.E.2d 552, 553 (Ind. Ct. App. 2007), a case in which our court reviewed the sufficiency of the evidence to support a conviction for criminal confinement.  Noting that the offense of confinement requires proof of a substantial interference with a person's liberty without the person's consent, our court also made clear that "in order to prove confinement beyond the main crime charged, there must be something more than the act necessary to effectuate the crime . . . ." *Cunningham*, 870 N.E.2d at 553.  Jones maintains that the State's evidence established the essential elements of felony domestic battery and strangulation, but that there was no confinement of R.O. greater than that required to effectuate the crimes.  Stated differently, Jones contends that the evidence used to convict Jones of battery and

---

[9] The State's entire argument regarding this issue is:  "Defendant's double jeopardy claim, even if correct, would only require this Court to vacate . . . possibly the criminal confinement conviction, but as all counts were ordered to be served concurrently such would have no effect on Defendant's actual sentence." *Appellee's Br.* at 8.

11

strangulation was the same evidence used to convict him of criminal confinement. *Appellant's Br.* at 9.  We disagree.

The conflict between Jones and R.O. began with a verbal altercation on the afternoon of April 13, 2011.  The exchange escalated and became violent.  The entire episode lasted four hours and occurred in the presence of the couple's children, who were under the age of sixteen.  R.O. testified that Jones poured formula on her face, slapped her face, and bit her on the side of her face.  *Id*. at 34-35, 47.  This evidence supported Jones's conviction for Class D felony domestic battery.  *See* Ind. Code § 35-42-2-1.3.  R.O. also testified that Jones choked her; "I couldn't breathe I was gaspin' for air and I kept askin' him to stop."  *Tr*. at 34.  This evidence supported Jones's conviction for Class D felony strangulation.  Ind. Code § 35-42-2-9.

The State charged that Jones "did knowingly confine R.O., another person, without said person's consent."  *Appellant's App.* at 30.  In addition to Jones choking, slapping, and biting R.O., there was also evidence that Jones criminally confined R.O.  R.O. testified that Jones pushed her onto the couch, sat on top of her, and told her that she "couldn't get up," and "couldn't leave."  *Tr*. at 34.  Additionally, through his actions, Jones kept R.O. in the home until he left the next morning, at which time R.O. called her family and then the police.

The actual evidence to convict Jones of criminal confinement was different from the evidence required to convict him of domestic battery and strangulation.  Jones's conviction for criminal confinement did not violate the prohibition against double jeopardy

## IV.    Sentencing

Jones contends that Judge Collins did not have the authority to vacate the sentence previously imposed by Commissioner Boyce.  Commissioner Boyce, acting as judge pro tempore, sentenced Jones on November 28, 2011, to two years on each felony count and one year on each misdemeanor count with all sentences to be served concurrently.  *Tr.* at 314-16.  Of that time, the trial court ordered Jones to serve 365 days in the DOC, 180 days in Community Correction, and 180 days on probation.  *Id.*  Both parties agree that Commissioner Boyce, by acting as judge pro tempore at the criminal trial, had the authority to conduct the sentencing hearing and impose a sentence.  *Appellant's Br.* at 12-14; *Appellee's Br.* at 9.  *See Long v. State*, 962 N.E.2d 671, 673 (Ind. Ct. App. 2012) (citing Ind. Code § 33-23-5-9(b)) (magistrate presiding at criminal trial may enter final order, conduct sentencing hearing, and impose sentence), *trans. denied*.

During a hearing held on December 12, 2011, the trial court noted:[10]

COURT:    Okay Mr. Jones, here's the story.  There are some things that occurred that, as to your sentencing, that can't happen[] without some more evaluations . . . . [a]nd that's what's going to happen today, it's going to be Community Corrections evaluation and then the sentencing is going to be redone.  Meanwhile, you'll be in jail. . . .  I have no idea which way this is going to go.  Do you understand that?

MR. JONES:  Okay.

COURT:    I have to take into consideration everything, your past in your probation case, your presentence investigation and this new evaluation.  They're going to be looking at your mental health and I take it that he was evaluated for competency and

---

[10] It is unclear which judge presided over this hearing.  The transcript of the hearing reflects that the hearing took place before Judge Collins, *tr.* at 368, however, the CCS, which is the official record of the court, indicates that Commissioner Boyce presided.  *Appellant's App.* at 15.

13

> insanity and they decided he was competent etcetera?

> PUBLIC DEFENDER: Correct but it did mention some mental health issues.

*Tr*. at 370-71. Thereafter, the trial judge asked Jones questions about his mental health and the treatment he received for his mental health. *Id*. at 371-75.

During a sentencing hearing held on January 24, 2012, Judge Collins heard testimony from R.O., Jones, and Jones's sister on topics covering Jones's mental health and corresponding treatment, his involvement in the life of his fourteen-year-old daughter, his job prospects, and the possibility of living with his sister in the event the trial court allowed him to serve time in Community Corrections. *Id*. at 185-202. The trial court also explored information from Marion County Community Corrections, which was provided in the form of a memorandum dated January 20, 2012. *Id*. at 198.

> At the conclusion of the hearing, Judge Collins stated:

> I don't have any choice, I've read everything in here, I am sending him to DOC. And then he will have a period of time probably on the probation/Community Corrections. So that's why I'm trying to figure out where is the, all of the credit going to go, on the conviction that I'm sentencing him to DOC or what. Let me know.

*Id*. at 208-09. Noting the problematic situation of having to consider Jones's sentence under this cause number as well as his sentence for a probation violation on a previous conviction, the trial court stated:

> 730 day DOC [sic], and I very rarely do it but I am really struck by the combination of these two cases. He did know that he had a significant mental health, mental illness and didn't follow through. That's typical and we usually work with that but it didn't get here for me to deal with that in a sufficient time and I apologize, I would have liked to have done more. I don't know if that would have figured, would have straightened it out but to

me it's not punishment it's purely incapacitation. So 730 days DOC, 730 days executed, how much credit?

*Id*. at 209. For time served plus credit time, Jones received 572 days of credit, which was credited against his most restrictive placement, *i.e.*, the executed time in DOC. *Id*. The remainder of the sentencing hearing addressed the sentence imposed for Jones having violated his probation.

Jones did not object during the December 12, 2011 hearing when the trial judge told him "the sentencing is going to be redone," *tr*. at 370, nor did he object at the January 24, 2012 hearing, during which Judge Collins entered an amended sentence. Recognizing that his failure to object waives his challenge to Judge Collins's authority on appeal, *see Floyd v. State*, 650 N.E.2d 28, 32 (Ind. 1994), Jones attempts to avoid waiver by arguing that the sentencing error was fundamental in nature. *See Beasley v. State*, 267 Ind. 396, 404, 370 N.E.2d 360, 364 (1977) (although failure to object at trial normally waives error on appeal, such is not the case when error is fundamental). "Fundamental error is error such that, if not rectified, would be a denial of fundamental due process." *Ware v. State*, 816 N.E.2d 1167, 1179 (Ind. Ct. App. 2004). An improper sentence constitutes fundamental error and cannot be ignored on review. *Id.* While we may correct sentencing error by the trial court on appeal even though the issue was not raised below, *id*., here we find no such error.

While Judge Collins had to resentence Jones because necessary evaluations had not been completed prior to Commissioner Boyce's November 28, 2011 hearing, the amended sentence did not increase Jones's original sentence of 730 days. The one

15

change was that Jones would have to serve his entire sentence executed at the DOC, instead of having some of his sentence on Community Corrections and some on probation. This change, however, does not constitute fundamental error. The grant of probation is a favor and not a right. *Beeler v. State*, 959 N.E.2d 828, 829 (Ind. Ct. App. 2011), *trans. denied*. As with probation, placement in a community corrections program "is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" *Brown v. State*, 947 N.E.2d 486, 489 (Ind. Ct. App. 2011) (quoting *Million v. State,* 646 N.E.2d 998, 1001–02 (Ind. Ct. App. 1995)), *trans. denied*. Therefore, Judge Collins's amended sentencing, which changed only placement in Community Corrections and probation, did not affect Jones's substantial rights or in any manner deprive Jones of due process. We find that the amended sentence imposed by Judge Collins did not constitute fundamental error.

## V. Prosecutorial Misconduct

Finally, Jones contends that the deputy prosecutor engaged in prosecutorial misconduct during closing argument of the guilt phase of the jury trial by impermissibly vouching for R.O.'s credibility. Jones concedes that he did not object to the prosecutor's remarks but contends that the prosecutor's comments constituted fundamental error, which justifies a new trial. *Appellant's Br.* at 16-20. The State fails to address Jones's fundamental error argument, but instead argues that Jones's "prosecutorial misconduct claim is unavailable for appellate review because [he] failed to properly preserve the issue by objecting, requesting an admonishment, and moving for a mistrial." *Appellee's Br.* at 7 (citing *Delarosa v. State*, 938 N.E.2d 690, 696 (Ind. 2010); *Cooper v. State*, 854

N.E.2d 831, 835 (Ind. 2006)).

During closing argument, the deputy prosecutor made the following statement:

You've heard no evidence that [R.O.] had any reason to make this up about Shiloh Jones; in fact she had every reason to do the opposite. Coming and being a witness for the State, giving these statements to the police, coming down doing depositions, setting [sic] outside the courtroom knowing what's going on in here, it's not fun, it's not pleasant, it's not exciting, it's difficult, it's scary[,] period. But she's here, right there, she's still here because it's the right thing and she was telling you the truth.

*Tr.* at 158-59. In *Cain v. State*, 955 N.E.2d 714, 721 (Ind. 2011), our Supreme Court

noted:

When a prosecutor is alleged to have made an improper argument at either the guilt or penalty phase of a trial, the defendant should request an admonishment from the trial court. *Cooper,* 854 N.E.2d at 835. If the defendant believes the admonishment to be insufficient, he should move for a mistrial. *Id.* When the claim of prosecutorial misconduct has been properly preserved through this procedure, we examine it in two steps. "[W]e determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." *Id.*

Because Jones did not object, request an admonishment, or move for a mistrial, he seeks

relief on the basis that the prosecutor's comments constituted fundamental error.

In some instances, prosecutorial misconduct may amount to fundamental error.

*Cowan v. State*, 783 N.E.2d 1270, 1277 (Ind. Ct. App. 2003), *trans. denied.* For such

misconduct to rise to the level of fundamental error, however, it must be so prejudicial to

the rights of the defendant as to have made a fair trial impossible. *Id.* In determining

whether an alleged error rendered a judicial proceeding unfair, this court must consider

whether the resulting harm or potential for harm is substantial. *Id.* A review of the

totality of the circumstances and a determination whether the error had a substantial influence upon the outcome are required. *Id.*

Assuming without deciding that it was error for the prosecutor to make statements about R.O.'s credibility, we address whether Jones was denied fundamental due process. Identity was not the issue at trial; instead, the issue before the jury was whether Jones had committed the charged offenses. The main witness for the State was the victim, R.O. The jury heard her testimony regarding the events that happened on the day in question. They also heard from two police officers who investigated the crimes and took photographs of R.O. to reflect her injuries.

The defense offered no witnesses but, instead, questioned R.O.'s credibility. Defense counsel asked R.O., "[Y]ou understood that you were to tell everyone, that you were to speak the truth and the whole truth?" *Appellant's App.* at 76. Additionally, defense counsel highlighted the inconsistencies in R.O.'s version of the events on the day in question. *Tr.* at 76-81.

During closing argument, the State maintained that R.O. was telling the truth. In rebuttal, the defense counsel during closing argument again raised the issue of R.O.'s credibility.

> What we're dealing with is a picture versus a thousand words. . . . Mr. Schmadeke [prosecutor] would have you gloss over all the details so that you're not able to focus on the fact that what we talked about earlier is the change in the details is why you can't rely on the testimony of [R.O]. So let's talk about the thousand words, the testimony of [R.O].

*Tr.* at 164-65. Defense counsel went on to explain the various inconsistencies in R.O.'s testimony—how she changed her story over time, adding injuries not previously

18

mentioned. *Id*. at 165-68. Defense counsel also suggested that the photograph exhibits did not reveal the injuries that R.O. claimed she had sustained.

> [The State] was talking about pictures again, we're talking about testimony versus pictures. [The State's witness] testified that if there are injuries she takes pictures of them. She also testified in certain situations she'll take pictures of people claiming that there's (inaudible), claiming that there's injuries, she'll take pictures, that's what she's trained to do, that's what she's suppose to do. But we don't have pictures of [R.O.'s] back where she was allegedly slammed into the wall ten times. That's not something you just forget to tell the officer and they forget to take pictures. She mentioned that she was bitten in the face; she mentioned that she was choked. If she had been slammed into the wall ten times that officer is trained to take pictures of those (inaudible). Pictures, it all comes back to that. Testimony you understand can change. It is about the details because over time people add, subtract, lies begat lies, you have to change your story, you have to try to remember things, you add things, you subtract things, truth is easy to tell . . . . That's not a picture of someone who's been strangled three times, that's not somebody who's been beaten about the face four times, that's not a picture of someone who's been dragged by her hair around the apartment, that's a picture of someone who's fine.

*Id*. at 168-69.

Jones's theory at trial was that R.O.'s story was inconsistent and could not be believed. During closing argument, the State asserted that R.O. was telling the truth. In rebuttal, defense counsel again asserted that R.O.'s story was inconsistent. Here, where R.O.'s credibility was at issue and both sides had their say on the matter, we cannot say that the statements made by the State placed Jones in a position of grave peril to which he should not have been subjected. Furthermore, because the statements did not deny Jones a fair trial, we find no fundamental error.

19

## Conclusion

On the basis of double jeopardy, we reverse Jones's convictions for Count IV, Class A misdemeanor domestic battery, and Count V, Class A misdemeanor battery, and we affirm Jones's conviction and sentence for Count I, Class D felony domestic battery. In all other respects, we affirm the trial court's decision. Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and MAY, J., concur.