**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JANE ANN NOBLITT**
Columbus, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAYSON CHAD-ALLEN GEORGE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 03A01-1304-CR-149 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BARTHOLOMEW CIRCUIT COURT
The Honorable Stephen R. Heimann, Judge
Cause No. 03C01-1101-FC-69

**January 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Following a jury trial, Jayson Chad-Allen George was convicted of criminal confinement, a Class C felony, and strangulation, a Class D felony, and was sentenced to an aggregate of ten years. George appeals his convictions and sentence, raising two issues for our review: 1) whether his convictions of both criminal confinement and strangulation violate the actual evidence test of Indiana Double Jeopardy analysis, and 2) whether his sentence is inappropriate given the nature of his offense and his character. Concluding there is no double jeopardy violation and his sentence is not inappropriate, we affirm George's convictions and sentence.

## Facts and Procedural History

George's girlfriend, Dusty Yarber, spent Christmas day 2010 at her parents' house. About 6:00 that evening, George picked Yarber up and took her with him to a friend's house where he was going to pick up some money. George and Yarber were at the house for two or three hours. For about an hour of that time, Yarber was sitting on a couch in the living room, playing on her phone, while George was in another room in the house with his friend. When George returned to the living room, he sat down next to Yarber and accused her of texting an ex-boyfriend. He picked up her phone and began going through it, yelling at Yarber and calling her a bitch. Eventually, he lifted her off her feet by the throat and pushed her up against the wall, poking her in the forehead with his free hand. Another person at the house distracted George so that Yarber was able to get away from him, and she ran out of the house. She walked to a gas station, where she used the bathroom and tried to regain her composure. She tried calling her sister for a ride, but got no answer, her father was at work and her mother is disabled. Having no

2

one else to ask for help, she called George and asked him to pick her up and give her a ride home because "enough time had passed that I thought he had calmed down." Transcript at 45.

George picked Yarber up, and once she was in the car, began yelling at her again about her ex-boyfriend and calling her names. Yarber told George their relationship was over, and he "started screaming . . . and pushed on the gas . . . jerking the wheel from side to side." Id. at 48. Yarber tried to get out of the car, but George grabbed her by her hair and pushed her head down onto his leg with his forearm on the side of her neck. He was pushing hard enough that she had trouble breathing and "[f]or a minute or two, . . . he completely shut off [her] air[.]" Id. at 50. Her head "felt light, tinkling, and [she] started seeing like white spots" and she thinks she may have blacked out. Id. at 50. He also poked her in the eye and tried to shove a ring she had been wearing into her mouth. When she tried to resist or fight her way free, George would press harder on her neck. At one point, Yarber was able to lift up slightly and reach the gearshift. She put the vehicle into park, but George put the vehicle back into gear and continued driving. They continued like this for several hours, with George driving erratically and yelling at Yarber while he held her head down on his leg, until George finally let her up and she realized they were stopped in her driveway. Yarber got out of the vehicle, ran into her house, and put the chain lock on the door. Eventually, police and paramedics arrived. Although Yarber initially told police that her injuries were sustained in a fall, she ultimately told them that George had beaten her up, and police took pictures of her injuries before she was transported to the hospital. Her injuries included bruising on her face and neck, broken blood vessels in her right eye, a cut on her lip, and chipped teeth. She testified

3

that on a scale of one to ten, her injuries as a whole were a "nine," or in other words, she suffered "extreme" pain. Id. at 80. In addition, the vision in her right eye is constantly "cloudy," and "sometimes it gets worse." Id. She also regularly has nightmares about the incident.

The State charged George with criminal confinement and battery resulting in serious bodily injury, both Class C felonies; strangulation, a Class D felony; and domestic battery, a Class A misdemeanor. A jury found George guilty of criminal confinement and strangulation as charged, not guilty of Class C felony battery resulting in serious bodily injury but guilty of the lesser included offense of Class A misdemeanor battery resulting in bodily injury, and not guilty of domestic battery. The trial court entered judgment of conviction on the criminal confinement and strangulation verdicts only,[1] and ordered George to serve a sentence of seven and one-half years for the criminal confinement conviction consecutive to two and one-half years for the strangulation conviction. George now appeals his convictions and sentence.

Discussion and Decision

I. Double Jeopardy

George contends his convictions for both criminal confinement and strangulation violate the Indiana Double Jeopardy Clause because there is a reasonable possibility the jury used the same evidentiary facts to establish the essential elements of each crime.

---

[1] The trial court found the battery verdict merged with the strangulation conviction and therefore did not enter a judgment of conviction on the battery count.

## A. Standard of Review

Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Our supreme court has concluded that two offenses are the same offense for Indiana double jeopardy purposes if, "with respect to <u>either</u> the statutory elements of the challenged crimes <u>or</u> the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." <u>Richardson v. State</u>, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original).

To prevail under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." <u>Id.</u> at 53. "[U]nder the <u>Richardson</u> actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." <u>Spivey v. State</u>, 761 N.E.2d 831, 833 (Ind. 2002). The "reasonable possibility" that the fact-finder used the same facts to support two convictions cannot be speculative or remote, <u>Griffin v. State</u>, 717 N.E.2d 73, 89 (Ind. 1999), <u>cert. denied</u>, 530 U.S. 1247 (2000), and it must be more than a "logical possibility," <u>Lee v. State</u>, 892 N.E.2d 1231, 1236 (Ind. 2008). It turns on "a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." <u>Lee</u>, 892 N.E.2d at 1236. It is appropriate to consider the charging information, jury instructions, and arguments of counsel in evaluating the evidence from the jury's perspective. <u>Id.</u> at 1234.

5

## B. Confinement and Strangulation

George contends there is a reasonable possibility "the jury used the evidence proving strangulation (the inability to breathe) to also prove criminal confinement (the inability to move, including the inability to exit the car) because strangulation was the means by which [George] confined [Yarber] inside the car." Brief of Appellant at 9.

The State charged George with criminal confinement for "knowingly or intentionally confin[ing] Dusty Yarber without the consent of Dusty Yarber, said offense having been committed by using a vehicle." Appendix at 12; see Ind. Code § 35-42-3-3(a)(1); see also Ind. Code § 35-42-3-3(b)(1)(B) (stating the crime is a Class C felony if committed by using a vehicle). The State also charged George with strangulation for "knowingly or intentionally apply[ing] pressure to the throat or neck of Dusty Yarber or obstruct[ing] the nose or mouth of Dusty Yarber in a manner that impeded normal breathing or blood circulation of Dusty Yarber." Appendix at 14; see Ind. Code § 35-42-2-9(b).

Here, confinement was proved by evidence that George held Yarber against his leg with his arm across her neck firmly enough that she could not move from that position or exit the vehicle for several hours. Strangulation was proved by evidence that George pushed against her neck hard enough that she had trouble breathing and got lightheaded. Yarber testified that George periodically pushed harder against her neck, primarily when she would try to escape or resist. Clearly, though, he did not hold her down that hard for the entire time they were in the vehicle, because constriction of her airway for several hours would have had more dire consequences than bruises. Moreover, Yarber testified that she was able at one point to lift up enough to reach the

6

gearshift and see briefly over the dash, that she could hear the things he was yelling at her, including threats that she would never see her son again, and that she screamed out in pain when he poked her in the eye, making it clear that though George kept a firm hold on her, he did not apply such pressure to her throat or neck for the duration of the confinement that her normal breathing was impeded for that entire time. While they were in the vehicle, George also poked and hit her.

Criminal confinement is a separate crime where the confinement of a victim is greater than that inherently necessary to commit a second charged crime. Hopkins v. State, 759 N.E.2d 633, 639-40 (Ind. 2001). In Jones v. State, 976 N.E.2d 1271, 1278 (Ind. Ct. App. 2012), trans. denied, we held that the actual evidence used to convict the defendant of criminal confinement was different from the evidence required to convict him of strangulation where the victim testified that the defendant choked her so that she could not breathe, but also testified the violent incident lasted four hours, the defendant slapped her, bit her on the side of the face, and sat on top of her telling her that she could not get up or leave. Ultimately, through his actions, the defendant kept the victim in the home from the afternoon of their altercation until the next morning. Here, too, George's confinement of Yarber lasted well past that necessary to strangle her, and we see no reasonable possibility that the jury used the same evidence to prove the essential elements of both crimes. Cf. Mendenhall v. State, 963 N.E.2d 553, 571 (Ind. Ct. App. 2012) (upholding confinement and attempted murder convictions where evidence showed that after defendant attempted to murder victim by pulling the trigger of a gun held to the victim's head, defendant continued to confine the victim while they fought in the car, victim tried to escape, and defendant tackled him outside the car and beat him: "[w]hile

7

we acknowledge that there is some chance that the jury relied on evidence of [defendant] pointing the gun at [the victim] while pulling the trigger to support the confinement conviction, the relevant question is whether there is a reasonable possibility that the jury did so."), trans. denied. George's convictions for criminal confinement and strangulation do not violate double jeopardy principles.

## II. Inappropriate Sentence

George also contends his ten year sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) provides that we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we] find[ ] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade us that his sentence is inappropriate, Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006), and he must demonstrate that his sentence is inappropriate in light of both the nature of his offenses and his character, Williams v. State, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). The principal role of 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). "We should focus on the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id.

The advisory sentence is the starting point our legislature has selected as an appropriate sentence for a crime. Childress, 848 N.E.2d at 1080. The advisory sentence for criminal confinement, a Class C felony, is four years with a sentencing range of two

to eight years. The advisory sentence for strangulation, a Class D felony, is one and one-half years with a sentencing range of six months to three years. George's sentences of seven and one-half years and two and one-half years, respectively, are in the high range of aggravated sentences. As for the nature of his offenses, George agreed to pick Yarber up and take her home, but instead restrained Yarber's liberty by physically holding her down inside his vehicle while yelling insults and threats at her, hitting and poking her, and restricting her airway to the point that she had difficulty breathing and got lightheaded, and he did so over the course of several hours. George argues that he took the actions he did to prevent Yarber from jumping out of a moving car and to "prevent harm, not cause it." Br. of Appellant at 10. However, George presented this version of events to the jury, and it obviously did not credit his testimony. Given the length of time George kept Yarber in his vehicle and his constant abuse of her over that time, we cannot say the aggravated sentences totaling ten years were inappropriate.

George's character also does not warrant a reduction in his sentence. His adult criminal history began in 1996, when he was nineteen, with a conviction for Class A misdemeanor battery resulting in bodily injury, and has continued even while this case was pending. As summarized in the pre-sentence investigation report:

> The defendant has been convicted on felony charges three times in the past and has previously executed a sentence at the Indiana Department of Correction. He has also been convicted on misdemeanor charges eight times in the past. He has been found in violation of probation three times involving past convictions. . . . He committed and was convicted of felony Theft in Hendricks County while the current charges were pending. . . . [W]hile these charges were pending, the defendant was charged with a battery involving serious injury to another inmate at the Bartholomew County Jail, a case which is pending a jury trial. He also has other felony charges pending a jury trial in Bartholomew County for carrying a handgun

9

without a license.  He has an active warrant in Jackson County and a body attachment in Hendricks County for probation violations . . . .

Appendix at 208-09.  George acknowledges that he has an extensive criminal history, but states that "he also has a history of substance abuse and an unstable family life.  He is 33% disabled and the father of two sons.  He was able to maintain sobriety for over six (6) years."  Br. of Appellant at 11 (record citations omitted).  However, he does not articulate how these things reflect so favorably on his character that his sentence is inappropriate.  George's criminal history includes other violent offenses against persons, and his repeated contacts with the criminal justice system show he has a lack of respect for the law.  In sum, George has failed to persuade us that his sentence is inappropriate in light of the nature of his offenses and his character.

## Conclusion

There is not a reasonable possibility the jury used the same evidence to find George guilty of both criminal confinement and strangulation, and therefore double jeopardy does not preclude convictions of both crimes.  Further, George's ten-year aggregate sentence is not inappropriate in light of the nature of his offenses and his character.  George's convictions and sentence are therefore affirmed.

Affirmed.

BARNES, J., and BROWN, J., concur.