**George Michael TRUE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 39A04–1102–CR–37.

Court of Appeals of Indiana.

Oct. 13, 2011.

B. Patrick Magrath, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Andrew R. Falk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

George Michael True appeals his conviction for Class A misdemeanor domestic battery. We reverse and remand.

### Issue

The sole issue we address is whether the trial court properly instructed the jury

that it could convict True of Class A misdemeanor domestic battery as a lesser included offense of Class D felony domestic battery.[1]

## Facts

The evidence most favorable to the conviction is that True and A.T. were married in 2004 and had two children, G.T. and Al.T. True filed for divorce in October 2008. After a contested hearing, on December 28, 2009, the trial court dissolved the parties' marriage and awarded True primary custody of the children, with A.T. having visitation on Wednesdays and every other weekend. A.T. was unhappy with this result and was planning to appeal it.[2]

On Friday, January 29, 2010, True delivered G.T. and Al.T. to A.T. for their weekend visitation, without incident. At this time, G.T. was eight years old, and Al.T. was a little over one year old. On the night of Saturday, January 30, 2010, A.T.'s six-year-old niece A.F. also stayed at A.T.'s apartment. After A.T., A.F., and G.T. woke up shortly after 7:00 a.m. on January 31, 2010, A.F. and G.T. ate breakfast, then went into A.T.'s bedroom to watch television.

A.T., meanwhile, went onto the balcony to care for her rabbit. After coming in from the balcony, she saw True standing in her kitchen. True said to her, "You're not going to make it to the Appeals Court alive." Tr. p. 205. A.T. became frightened and repeatedly told True that the children were awake. True ignored her, then pushed her to the floor and began hitting her with one of her belts, and shoved her face with his hand. During the incident, A.T. continued saying to True, "The kids are awake. You don't want to do this." *Id.* at 212. A.F. saw True hit

A.T. with a belt, then went back into A.F.'s bedroom with G.T. G.T. heard his father in the apartment say, "I'm going to kill all of you." *Id.* at 79. After knocking items off of shelves in the kitchen and hallway, True left the apartment as Al.T. woke up and began crying.

At 8:27 a.m., G.T. called 911. Parts of the call are not very intelligible, but G.T. seems to say that his mother and father are fighting and had just gotten divorced. G.T., however, was unable to provide the 911 dispatcher with anything more of his address than that he lived in apartment number four. After several attempts to discern a more precise address, G.T. told the dispatcher to "never mind," and hung up. Ex. J.

At 8:49 a.m., G.T. called 911 again. This time he said that his father had hit his mother in the face with a belt and that his mother was vomiting in the kitchen. G.T. also was able to provide a more complete address, police were dispatched to the scene, and A.T. made her report of battery.

For his part, True has consistently maintained that he was never at A.T.'s apartment on January 31, 2010. True's defense essentially has been that A.T. fabricated the battery allegation against him and coached the children to lie in support of that allegation in order to influence the ongoing custody battle between True and A.T. True claims that he slept in until after 9:00 a.m. on January 31, 2010, went to church around 10:00 a.m. with his parents, and after leaving church was pulled over and arrested by police on the basis of A.T.'s report. Among other things, True also has noted inconsistencies between A.T., G.T. and A.F.'s trial testimony and other statements they have made.

---

1. In light of our disposition of this issue, we need not address True's argument that the trial court erroneously prevented him from presenting impeachment evidence.

2. The divorce took place in Kentucky. The parties thereafter moved to separate residences in Madison, Indiana.

The State charged True with Class D felony criminal confinement and Class D felony domestic battery. The domestic battery charge alleged that the incident had occurred in the physical presence of a child under sixteen years old, i.e., G.T., Al.T., and A.F., which elevated the charge from a Class A misdemeanor to a Class D felony. A jury trial was held on November 16–19, 2010. At the State's request and over True's objection, the trial court instructed the jury that it could convict True of Class A misdemeanor domestic battery, which does not require the battery to occur in the presence of a child, as a lesser included offense of Class D felony domestic battery. True specifically objected that the evidence did not support the giving of a lesser included offense instruction. At the conclusion of trial, the jury found True not guilty of Class D felony criminal confinement and Class D felony domestic battery but found him guilty of Class A misdemeanor domestic battery. True now appeals.

## Analysis

 True argues that the trial court erred in giving the jury a lesser included offense instruction over his objection. When a party requests a trial court to instruct a jury on a lesser included offense of a charged crime, the court must perform a three part analysis. *Wright v. State*, 658 N.E.2d 563, 566 (Ind.1995). First, it must determine whether the alleged lesser included offense is inherently included in the greater offense. *Id.* An offense is inherently included if (a) the alleged lesser included offense may be established by proof of the same material elements or less than all the material elements defining the crime charged, or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the

lesser offense. *Id.* Second, if an offense is not inherently included, then the court must determine whether the offense is factually included by comparing the charging instrument to the statute defining the alleged lesser included offense. *Id.* at 567.

 Third, if an offense is either inherently or factually included within a greater offense, then the court must look at the evidence presented in the case by both parties and determine whether there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense. *Id.* If there is such a dispute, such that a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. *Id.* "If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction." *Id.* When the propriety of giving a lesser included offense instruction turns on the existence or not of a serious evidentiary dispute, and the trial court has made an express finding on the existence or lack of such a dispute, our standard of review for a lesser included offense instruction is abuse of discretion. *Charlton v. State*, 702 N.E.2d 1045, 1048 (Ind.1998). If a trial court makes no explicit finding regarding a serious evidentiary dispute, we review the ruling de novo. *Wilkins v. State*, 716 N.E.2d 955, 957 (Ind.1999).

 Here, the trial court found, and True concedes, that Class A misdemeanor domestic battery is an inherently lesser included offense of Class D felony domestic battery. The only issue is whether there was a serious evidentiary dispute regarding the element distinguishing the two offenses. The domestic battery statute provides in part:

(a) A person who knowingly or intentionally touches an individual who:

 (1) is or was a spouse of the other person . . .

in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

(b) However, the offense under subsection (a) is a Class D felony if the person who committed the offense . . .

 (2) committed the offense in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense.

Ind.Code § 35–42–2–1.3. The State expressly charged True with violating subsection (b)(2) of this statute and, at the State's request, the trial court instructed the jury that it also had the option of convicting True of Class A misdemeanor domestic battery instead of Class D felony domestic battery.

■■■ In the vast majority of cases that arise, it is a defendant who has requested a lesser included offense instruction, and on appeal we or our supreme court have been asked to review whether the trial court erred in refusing to give such an instruction. Fairly recently, however, our supreme court squarely held that it is reversible error for a trial court to give a lesser included offense instruction at the request of the State in the absence of a serious evidentiary dispute distinguishing the lesser offense from the greater. *Watts v. State*, 885 N.E.2d 1228, 1232–33 (Ind. 2008).

*Watts* specifically addressed a situation in which the defendant was charged with murder, and the State requested and obtained a jury instruction on the lesser included offense of voluntary manslaughter over the defendant's objection. Ultimately, the jury acquitted the defendant of murder but found him guilty of voluntary manslaughter, even though there was no legally adequate evidence of sudden heat that would have supported a conviction for that offense. *Id.* at 1233. Our supreme court held the trial court committed reversible error in giving the voluntary manslaughter instruction and made the following observations:

> [T]his case illustrates how a voluntary manslaughter instruction in the absence of evidence of sudden heat can prejudice a defendant. One legitimate trial strategy for the defendant in a murder trial is an "all-or-nothing" one in which the defendant seeks acquittal while realizing that the jury might instead convict of murder. In a situation where a jury must choose between a murder conviction and an acquittal, the defendant might well be acquitted. But if the jury has voluntary manslaughter as an intermediate option, the defendant might be convicted of voluntary manslaughter as a "compromise." Such a verdict is not appropriate if unsupported by any evidence of sudden heat; moreover, an unsupported voluntary manslaughter instruction deprives the defendant of the opportunity to pursue a legitimate trial strategy.

*Id.*

It is true that *Watts* addressed the special case of voluntary manslaughter being a lesser included offense of murder, even though unlike most lesser included offenses, voluntary manslaughter requires additional proof not required in a murder case—proof of sudden heat.[3] *Id.* at 1232.

---

**3.** Sudden heat is described as a mitigating factor, not an element of voluntary manslaughter. *Watts*, 885 N.E.2d at 1232.

Here, we are faced with a "pure" lesser included offense, in which the lesser offense of Class A misdemeanor domestic battery requires less proof to convict than does the greater offense of Class D felony domestic battery. Still, the *Watts* court's observations regarding the propriety of a defendant's "all-or-nothing" defense strategy, and how such a defense can be improperly undermined by the State obtaining a lesser included offense instruction where the evidence does not warrant such an instruction, would seem to apply with equal force in this case.

Additionally, aside from *Watts* and the special case of voluntary manslaughter, our supreme court has long expressed concern over the possibility of a jury entering a "compromise" verdict based on the giving of a lesser included offense instruction where the evidence does not warrant such an instruction. *See Wright v. State,* 690 N.E.2d 1098, 1108 (Ind.1997) (holding that to give a lesser included offense instruction when there is no serious evidentiary dispute about the element distinguishing the two offenses "would be to improperly encourage the jury to reach a compromise verdict."); *Leon v. State,* 525 N.E.2d 331, 332 (Ind.1988) (holding that if the evidence on an element distinguishing the greater offense from the lesser offense "is sufficient and is not in serious dispute, the trial court should refuse the lesser included instruction to avoid the possibility of a compromise verdict."); *McNary v. State,* 428 N.E.2d 1248, 1250–51 (Ind.1981) (holding that where defendant raised alibi defense to crime and evidence established that defendant was either guilty of the charged offense or no offense at all, giving of lesser included offense instruction would have erroneously allowed the jury to speculate upon a factual scenario with no evidentiary basis and improperly opened the door to a "compromise" verdict). These cases all were ones in which a defendant had requested a lesser included offense instruction. *Watts* makes clear, however, that neither the State nor a defendant may seek to have a jury enter a "compromise" verdict, based on the giving of a lesser included offense instruction that is not supported by the evidence.

Here, the distinguishing element between Class D felony domestic battery as charged and Class A misdemeanor domestic battery is whether the battery was committed in the presence of a child or children. At trial, True clearly pursued an "all-or-nothing" defense strategy, noting conflicting evidence in the record as to whether he was ever present at A.T.'s apartment on the morning of January 31, 2010. He never made any argument, or attempted to present any evidence, that even if he had battered A.T., that it was not knowingly committed in the presence of children. The evidence was conflicting only on the point of whether True committed any battery at all; it was not conflicting on the point of whether the crime, if committed, was committed in the presence of children as that phrase is used in the domestic battery statute. The State's case relied heavily upon the testimony of G.T., who claimed to have heard his father in the house, and A.F., who claimed to have seen True strike A.T. with a belt. A.T. herself testified that she repeatedly told True that the children were awake. There also is no doubt that True knew that his children G.T. and Al.T., at the least, were present at the apartment, as he knew they were having visitation with A.T.

The State asserts in its brief that the jury could have found the crime was not committed in presence of children because G.T. did not say that he saw True at the apartment, as opposed to hearing him, and A.F. only "saw little, if any, of the attack...." Appellee's Br. p. 8. If the jury were to find the battery did not occur in the presence of children merely because none of the children *saw* the battery, that

would represent a misunderstanding of what the statute requires. "Presence" is defined as knowingly being within either the possible sight *or hearing* of a child. I.C. § 35–42–2–1.3(b)(2). And, if the State's evidence here was to be believed, G.T. and A.F. unquestionably heard the confrontation between A.T. and True. In any event, none of the children had to actually sense the battery; there only needed to be the possibility that they "might" see or hear it. *See Boyd v. State,* 889 N.E.2d 321, 325 (Ind.Ct.App.2008), *trans. denied.*

We also note that the State's closing argument regarding the lesser included offense failed to direct the jury to any conflicting evidence regarding whether the battery was committed in the presence of children. It simply noted the different proof required for each offense and stated, "You see the difference? Just the one thing is missing. It's not in the presence of a child. So you're going to get an instruction about that as well." Tr. p. 519.

It is unclear whether the trial court issued an actual finding about whether there was a serious evidentiary dispute regarding the element of the presence of a child. The court only stated "that the evidence presented supports giving the in-

struction...." *Id.* at 492. Regardless of whether we review the giving of this instruction de novo or for an abuse of discretion, however, we conclude there clearly was no serious evidentiary dispute about whether the battery was committed in the presence of children. Either there was a domestic battery committed in the presence of children, or there was no battery at all. Instructing the jury that it could convict True of Class A misdemeanor domestic battery instead of Class D felony domestic battery improperly invited the jury to reach a "compromise" verdict.

### Conclusion

The trial court erroneously instructed the jury that it could convict True of Class A misdemeanor domestic battery as a lesser included offense of Class D felony domestic battery. We reverse his conviction and remand for further proceedings consistent with this opinion.[4]

Reversed and remanded.

ROBB, C.J., and BRADFORD, J., concur.

---

**4.** It is clear that Double Jeopardy principles prohibit True's retrial for either Class D felony of which the jury found him not guilty. *See Haddix v. State,* 827 N.E.2d 1160, 1162–63 (Ind.Ct.App.2005), *trans. denied* (quoting *Green v. United States,* 355 U.S. 184, 190–91, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957)). It is within the discretion of the prosecutor whether to pursue charges and a second conviction for Class A misdemeanor domestic battery or another offense.