## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 06 2016, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Edward Hervey
Krasutsky & Hervey, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Rodrigo Hernandez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 6, 2016

Court of Appeals Case No.
49A05-1510-CR-1686

Appeal from the
Marion Superior Court

The Honorable
Angela D. Davis, Judge
The Honorable Allan W. Reid,
Commissioner

Trial Court Cause No.
49G16-1407-FD-33869

**Kirsch, Judge.**

[1] Following a bench trial, Rodrigo Hernandez ("Hernandez") was convicted of Class D felony criminal confinement[1] and Class D felony domestic battery committed in the presence of a child.[2] Hernandez appeals and raises four issues that we consolidate and restate as:

> I. Whether the State presented sufficient evidence to convict Hernandez of Class D felony criminal confinement and Class D felony domestic battery; and
>
> II. Whether Hernandez's convictions violate double jeopardy principles.

[2] We affirm.[3]

## Facts and Procedural History

[3] Over the course of seven to ten years, Hernandez and a woman named Gabriela Plata ("Plata") were involved in an "on and off" relationship, although during that time Hernandez was married to another woman. *Tr.* at 4-5, 27. According to Plata, she and Hernandez lived together, at one point, for a couple of months. She also maintains that they have one daughter together, a fact which Hernandez neither admits nor denies. That child, who was age six

---

[1] *See* Ind. Code § 35-42-3-3(a)(1). We note that the statutes under which Hernandez was convicted were amended effective July 1, 2014; however, we apply the statutes that were in effect at the time he committed his offenses in May 2014.

[2] *See* Ind. Code § 35-42-2-1.3(a).

[3] Hernandez was also convicted of Class D felony battery resulting in bodily injury, Class A misdemeanor domestic battery, and Class A misdemeanor battery resulting in bodily injury, but those three convictions were merged into the Class D felony domestic battery conviction.

at the time of the incident at issue, lived with Plata and Plata's other minor daughter (together, "Daughters") in an Indianapolis apartment.

[4]    On May 30, 2014, around 7:00 or 8:00 p.m., Plata went to Hernandez's place of employment, a night club where Hernandez worked as a disc jockey, and she brought Daughters with her. According to Plata, she went there to confront Hernandez about a rude and vulgar voicemail that he had left her earlier in the day; however, Hernandez asserted that she came to his employment to confront him because he had ignored texts that Plata had sent to him earlier in the day. Plata and Daughters did not ever leave the car, but Plata exchanged words with Hernandez, and then she left.

[5]    Later that night, at around 2:00 a.m. on May 31, Plata was home and asleep in her bed. Daughters were also there, sleeping with Plata in her bed. Plata was awakened by the sound of loud knocking at her front door. She got up, went to another room, looked out, and upon seeing that it was Hernandez, she started walking back to her bedroom. However, the knocking continued and was loud, so she went to the door and opened it slightly. She told him, "[T]here is no reason for you to be here knocking at my door." *Tr.* at 9. She tried to shut the door, but Hernandez pushed the door open with one hand and pushed her with the other. Plata fell to the floor, and "at the same time . . . he shut[ ] the door behind him." *Id.* at 11.

[6]    When Plata tried to stand up, Hernandez held her to the floor by pushing with his hand or arm on her left arm. He hit and kicked her while she was on the

ground. She struggled, and when she was able to get herself up, she told Hernandez to leave, but he sat down in her nearby dining room and laughed at her, saying, "Look at you, always thinking you're so tough." *Id*. at 13. Plata could not call the police, as her cell phone remained in her bedroom, and she was "trying to prevent . . . all of that ending up happening in my room in front of my [D]aughters." *Id*. at 14. Hernandez warned Plata to "be careful," stating, "I can kill you myself." *Id*. After running his finger across her neck, in a slicing motion, he left her apartment.

[7] Plata immediately contacted police, who responded and spoke with her, but did not take any photographs because the officer did not see any visible signs of injury. After police left, Plata returned to bed, and when she woke in the morning, Plata was sore. She noticed some scratch marks, redness, and bruising on her arms and legs, so she took pictures. On Tuesday, June 2, 2014, Plata applied for and obtained a protective order against Hernandez. While applying for the protective order, the employee assisting her noticed bruising. Police thereafter arrived and took pictures of Plata's arms, back, and legs.

[8] On July 7, 2014, the State charged Hernandez with the following five counts: Count I, Class D felony criminal confinement; Count II, Class D felony domestic battery; Count III, Class D felony battery resulting in bodily injury; Count IV, Class A misdemeanor domestic battery; and Count V, Class A misdemeanor battery resulting in bodily injury. Hernandez waived his right to a jury trial.

[9]     At the July 24, 2015 bench trial, Plata testified that Hernandez's knocking at her door was loud, and she did not want to wake the neighbors or Daughters, so she opened the door enough to allow her to tell him to leave. She said that, after he pushed the door open and she fell, he held her to the ground. She described, "He's holding me down," and "I can't get up." *Id*. at 12. Hernandez kicked Plata in her back, arms, and legs. Plata testified that Hernandez was "mad and loud." *Id*. at 10. She said she was "praying for" Daughters and was trying to prevent the altercation "from happening in my room," where Daughters were asleep. *Id*. at 13. The pictures that Plata took of herself that morning when she awoke were admitted into evidence, as were the ones taken by police on June 2.

[10]    Thereafter, Hernandez testified in his defense.[4] He explained that Plata came to his place of employment because she was angry that he had not answered her earlier text messages. He stated that Daughters were in the car with Plata at his place of employment, as she angrily spoke to him, and they exchanged heated words. As to why he went to her apartment at about 2:00 a.m., after he left work, Hernandez testified, "[B]ecause she left when she was angry and she drinks and I was worried about her drinking and driving and I was worried about the [D]aughters." *Id*. at 32. Hernandez testified that, contrary to what Plata had said while testifying, he knocked quietly at her door, one time. He

---

[4] The record reflects that a Spanish interpreter was used during Hernandez's testimony. *Tr*. at 34; *Appellant's App*. at 28 ("Interpreter services used").

said that she answered the door quickly, which indicated to him that she had been awake. Hernandez told her that he "just want[ed] to talk." *Id*. at 33. He testified that he did not enter her apartment right away, explaining that initially he "waited outside[,]" but then went "into her house [] because she got aggressive and she was yelling loudly." *Id*. Hernandez stated that Plata was gesturing at him and then "collapsed" or "fell" at the door. *Id*. at 36. He lifted her up, they went inside, and he closed the door and sat down. When Plata started insulting "my wife and daughters," Hernandez left, slamming the door. *Id*. at 37. Hernandez denied ever pushing Plata, holding her down, or kicking or hitting her. He said that Plata "was the one that was upset" and that he tried to calm her. *Id*. at 41.

[11] The trial court took the matter under advisement, later issuing an order, finding, among other things, "The court finds Mr. Hernandez'[s] testimony not credible and Ms. Plata's testimony credible." *Appellant's App*. at 8. The trial court found Hernandez guilty of all charges, but ordered that Counts II through V merge, and it entered judgment of conviction on Counts I and II. Hernandez filed a motion to correct error, alleging that the evidence was insufficient to prove the charged offenses because Plata's testimony was not credible, and her pictured injuries were not consistent with her testimony that Hernandez kicked and hit her; the trial court denied the motion. Hernandez now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[12] Hernandez claims the evidence was insufficient to convict him of criminal confinement and felony domestic battery. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Boyd v. State*, 889 N.E.2d 321, 325 (Ind. Ct. App. 2008), *trans. denied.* We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

### A. Criminal Confinement

[13] Hernandez was convicted of Class D felony criminal confinement. Indiana's criminal confinement statute provides, in pertinent part, that:

> (a) [a] person who knowingly or intentionally:
>
> (1) confines another person without the other person's consent; or
>
> (2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

commits criminal confinement. Except as provided in subsection (b), the offense of criminal confinement is a Class D felony.

Ind. Code § 35-42-3-3; *State v. Greene*, 16 N.E.3d 416, 419 (Ind. 2014). The statute encompasses two distinct types of criminal confinement: confinement by non-consensual restraint and confinement by forcible removal. *Greene*, 16 N.E.3d at 420-21. Hernandez was charged with and convicted of confinement by non-consensual restraint.

[14] Hernandez argues that the evidence was insufficient to convict him because "the State offered no direct evidence that Hernandez restrained Plata's liberty," noting that "at no time did Plata ever testify that she felt confined." *Appellant's Br.* at 17-18. He suggests that there was no evidence to establish confinement beyond or separate from the evidence that was used to establish the battery. *Id*. at 17. We disagree.

[15] While Plata may not have expressly used the phrase "I felt confined," she expressed the confinement by describing it. She testified that Hernandez, after pushing his way inside her home, shut the door behind him. She asked him to leave, multiple times, and he would not. He held her down on the floor by pressing on her left arm, which, because she was positioned on her side, pinned the right side of her body to the floor. She tried to stand "and pull herself to safety," but Hernandez held her down. *Tr.* at 12. From Plata's testimony, the trial court could have reasonably inferred that she was confined. To the extent that Hernandez argues that that the act of holding down Plata to the floor was "necessary to effectuate the crime of battery," we reject that claim. *Id*. at 18.

He could have kicked, hit, and otherwise battered her without pinning her to the floor. We find the evidence was sufficient to convict Hernandez of Class D felony criminal confinement.

### B. Felony Domestic Battery

[16]     Hernandez was charged with and convicted of Class D felony domestic battery.[5] The offense of domestic battery is governed by Indiana Code section 35-42-2-1.3, which provides:

> A person who knowingly or intentionally touches an individual who:
>
> (1) is or was a spouse of the other person;
>
> (2) is or was living as if a spouse of the other person as provided in subsection (c); or
>
> (3) has a child in common with the other person;
>
> in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

The offense "is a Class D felony if the person who committed the offense . . . committed the offense in the physical presence of a child less than sixteen (16)

---

[5] Hernandez claims that the evidence was insufficient to convict him on counts II and III (Class D felony domestic battery and Class D felony battery resulting in bodily injury, respectively); however, judgment of conviction was only entered on Count II, and thus, our analysis only concerns that conviction.

years of age, knowing that the child was present and might be able to see or hear the offense." Ind. Code § 35-42-2-1.3(b)(2). "Presence" is defined as knowingly being within either the possible sight or hearing of a child." *True v. State*, 954 N.E.2d 1105, 1111 (Ind. Ct. App. 2011). That is, the child does not have to actually sense the battery; there only need be the possibility that the child "might" see or hear it. *Id*. This court has noted that the word "might" generally represents a weaker possibility or probability than the word "may." *Boyd*, 889 N.E.2d at 325 (citing American Heritage Dictionary of the English Language at 1113).

[17] Initially, Hernandez argues that the evidence was not sufficient to convict him of felony domestic battery because Plata's testimony was incredibly dubious.[6] Under the incredible dubiosity rule,

> [i]f a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

---

[6] Hernandez does not expressly contest that he was in a domestic relationship with Plata or that they have a child together. We further note that this court has recognized that a defendant may be convicted of domestic battery on an individual with whom he or she was in an extramarital relationship. *Bowling v. State*, 995 N.E.2d 715, 718 (Ind. Ct. App. 2013).

*Morell v. State*, 933 N.E.2d 484, 492 (Ind. Ct. App. 2010) (quotations and citations omitted). "[T]he standard for dubious testimony is inherent contradiction, not contradiction between the testimony of witnesses." *Id*.

[18] Hernandez points to nothing inherently improbable or contradictory about Plata's testimony. Rather, he claims that Plata's version of events, describing what transpired at the apartment, was completely false, maintaining that, contrary to what she said, he knocked quietly once, she came to the door right away, they spoke, she collapsed, he lifted her up and got her inside, and he shut the door only because she was loud and angry. The trial court determined that Hernandez's version was not credible and Plata's version was credible, and we will not reweigh the evidence or assess witness credibility. *Palacios v. State*, 926 N.E.2d 1026, 1034 (Ind. Ct. App. 2010). Furthermore, the incredibly dubiosity rule applies only where "there is a complete lack of circumstantial evidence." *Id*. Here, the State presented pictures taken by Plata the morning after the incident as well as pictures taken two days later by police, which showed bruising to Plata's upper left arm and her left leg and scratches to her neck that corroborated her testimony. *State's Exs.* 8-13. Based on the foregoing, we find that the incredible dubiosity rule is inapplicable.

[19] Next, Hernandez asserts that the State failed to demonstrate that Daughters were present in the apartment. However, Plata testified the girls lived with her at the apartment and were asleep with Plata in her bed that night. Plata described that she was afraid Hernandez's knocking and subsequent behavior in her apartment were going to wake them, and she was "praying for" Daughters

and hoping the altercation would not move to the bedroom where they were sleeping. *Tr.* at 13. To the extent that Hernandez argues that there was no evidence that he knew Daughters were present, we again are not persuaded. Plata testified that the girls lived with her and that she had an ongoing relationship with Hernandez for up to ten years; thus it was reasonable for the trial court to infer that Hernandez knew the girls lived with Plata. Furthermore, Hernandez explained that the reason he went to Plata's apartment in the early morning hours after he got off work was to check on Daughters, stating, "I was worried about [Plata] drinking and driving and I was worried about the [D]aughters." *Id.* at 32. From these facts, it was reasonable for the trier of fact to infer that Hernandez knew Daughters, who were under age sixteen, were present at the apartment at 2:00 a.m.

[20] Hernandez next argues that "the record is void of any evidence that there was the possibility that the children might see or hear the battery," as is necessary for the Class D felony domestic battery conviction. *Appellant's Br.* at 11. While there was no direct evidence of the exact distance from the apartment's bedroom, where Daughters were in bed, to the area inside the front door, where the altercation with Hernandez took place, there was other evidence presented from which the trial court could have inferred Daughters might have seen or heard the altercation. Plata and Daughters lived in an apartment. Plata, asleep in her room, was awakened by Hernandez's loud and repeated knocking at the front door, the volume of which was loud enough that it not only woke her up, but she feared that it might wake up her neighbors as well as Daughters. The

altercation began near the front door and moved to or near the dining room. Plata testified that after Hernandez was inside, he held her to the ground, while she struggled to get up and told him repeatedly to leave. After he released his hold on Plata, he sat in a chair and laughed at her for thinking she was "tough." *Tr.* at 13. According to Hernandez, he "slammed" the door when he left because Plata was speaking negatively about his wife and children. *Id.* at 37. We find that, from the evidence presented, the trial court could have inferred that Daughters "might be able to see or hear the offense" as required under the statute.

[21] Hernandez urges that this case is similar to *Young v. State*, 980 N.E.2d 412, 423 (Ind. Ct. App. 2012), where this court determined that the evidence presented was insufficient for the jury to conclude that Young committed domestic battery "knowing that the child was present and might be able to see or hear the offense" and reversed Young's Class D felony domestic battery conviction and remanded with instructions to enter judgment of conviction for Class A misdemeanor domestic battery. *Id.* Hernandez asks us to do the same. However, we find that the facts of *Young* are distinguishable from those before us today.

[22] Young and Blanca Medrano ("Mother") were the parents of two minor children, a two-year-old and an infant. While at their apartment one morning, they argued. At the time, a friend named Dulce Gomez ("Gomez") was at the apartment, and she saw Young and Mother argue, but she did not observe any physical contact between Mother and Young. Gomez left the apartment

around 10:30 a.m. About noon, Mother walked to a nearby fire station, crying and holding an infant. Acting Lieutenant Michael Hochstetler ("Hochstetler") spoke with Mother and inquired what was wrong, and he observed she had bruising on her body. Mother told Hochstetler that her husband, Young, had beaten her and left with their other child. Mother told Hochstetler that her bruises were from her husband beating her "at their apartment across the street" about "15 minutes ago." *Id*. at 416. Young was charged with, among other things, Class D felony domestic battery.

[23] At trial, Mother could not be found and, consequently, did not testify. Gomez testified that she saw the parties argue, but did not see any physical contact, and she left at 10:30 a.m. Hochstetler testified that Mother, who arrived at the fire station around noon, did not tell him where the children were when the incident happened, nor did he ask her. *Id*. at 423. The jury found Young guilty.

[24] On appeal, Young argued that the evidence was insufficient to prove that he committed the domestic battery "knowing that the child was present and might be able to see or hear the offense." *Id*. This court agreed, observing that "Gomez left, at the very least, a full hour before the incident occurred," and while Hochstetler testified that Mother told him the incident happened about fifteen minutes prior "at their apartment," there was no evidence as to precisely where the incident took place and where the children were during the incident. *Id*. Given that "the only evidence as to the location of the incident and of the children during the incident is the vague preposition 'at,'" this court held that

the evidence was insufficient for the jury to conclude that Young committed domestic battery knowing that the child was present and might be able to see or hear the offense, as is required to elevate the offense to a Class D felony under Indiana Code 35-42-2-1.3(b)(2). *Id.*

[25] In contrast to *Young*, where there was a complete lack of testimony concerning "where the incident took place and where the children were during the incident," the trial court in this case heard Mother testify that she was in her apartment, asleep in her bed with Daughters, when she was awakened by Hernandez's loud knocking at the front door. After Hernandez pushed his way inside the apartment, a physical struggle ensued. Plata testified that she tried to prevent the situation from moving to the bedroom. Again, under our standard of review, we examine whether an inference may reasonably be drawn from the evidence to support the verdict. *Palacios*, 926 N.E.2d at 1034. We find that, here, the trial court reasonably could have inferred that Daughters, who were asleep in a bedroom of the apartment, "might be able to see or hear the offense." Accordingly, the State presented sufficient evidence to support Hernandez's Class D felony domestic battery conviction.

## II. Double Jeopardy

[26] Hernandez argues his convictions violate Indiana's constitutional prohibition against double jeopardy. Indiana's Double Jeopardy Clause ("the Double Jeopardy Clause"), found in Article 1, Section 14 of the Indiana Constitution, "was intended to prevent the State from being able to proceed against a person

twice for the same criminal transgression." *Jones v. State*, 976 N.E.2d 1271, 1275 (Ind. Ct. App. 2012) (citing *Richardson v. State,* 717 N.E.2d 32, 49 (Ind. 1999)), *trans. denied*. Two or more offenses are the "same offense" in violation of the Double Jeopardy Clause, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Id.*

[27] Under the "actual evidence" test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Id.* To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Id*. at 1275-76. The "reasonable possibility" that the fact-finder used the same facts to support two convictions must be more than a "logical possibility," and rather, it "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). If there is "no sufficiently substantial likelihood" that the jury used the same evidentiary facts to establish the essential elements of the two offenses, then the possibility is remote and not reasonable. *Hopkins v. State*, 759 N.E.2d 633, 640 (Ind. 2001).

[28]     The fact that the same evidence may have been used to establish a single element of each of two offenses does not constitute a double jeopardy violation. *Spivey v. State,* 761 N.E.2d 831, 833 (Ind. 2002). As long as each conviction requires proof of at least one unique evidentiary fact, the convictions are not barred by double jeopardy. *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002). Whether a conviction violates Indiana's prohibition against double jeopardy is a question of law and is reviewed de novo. *Jones*, 976 N.E.2d at 1275.

[29]     The State charged Hernandez with Class D felony criminal confinement by alleging that he "did knowingly confine [] Plata without the consent of said person[.]" *Appellant's App*. at 4. It charged him with Class D felony domestic battery by alleging that Hernandez "did knowingly in a rude, insolent, or angry manner touch [] Plata . . . and further said touching result[ed] in bodily injury to the other person, specifically: bruising and/or scratch and/or pain" and that Hernandez "committed said offense in the presence of [either Daughter]," a child less than sixteen years of age "knowing that the child was present and might be able to see or hear the offense." *Id*. As our Supreme Court has observed, where the confinement of a victim is greater than that which is inherently necessary to commit a crime, the confinement is a separate criminal transgression. *See Hopkins,* 759 N.E.2d at 641 (where defendant's confinement of victims extended beyond what was necessary to rob them, convictions for robbery and confinement were based on separate facts and did not constitute double jeopardy).

[30]  In this case, the two charged offenses do not share any common essential elements. Rather, Hernandez claims that his convictions violate the "actual evidence" test, contending that the evidence used by the trial court to establish that he touched and injured Plata in a "rude, insolent, or angry manner" was the same evidence used to establish the offense of criminal confinement. *Appellant's Br*. at 19. However, the State maintains that the evidence used to support each of Hernandez's convictions was distinct. We agree.

[31]  Here, criminal confinement was proved by evidence that Hernandez pushed Plata down and pinned her to the floor by putting pressure on her left arm, such that her right side was pressed to the floor; she attempted to get up, but he would not release her. Domestic battery was proved by evidence that Hernandez kicked Plata and also hit her with his hand or hands, which caused bruising, redness, and injury. That is, the evidence that Hernandez pinned down Plata and held her to the floor was not necessary to support the battery conviction.

[32]  Based on the record before us, we do not find that there is a reasonable possibility that the trial court used the same actual evidence to find that Hernandez committed domestic battery and criminal confinement. Hernandez's convictions for Class D felony criminal confinement and Class D felony domestic battery did not violate the prohibition against double jeopardy. *See Jones*, 976 N.E. at 1278 (finding no violation of actual evidence test where defendant slapped, bit, and choked girlfriend, and he also pushed her to couch, sat on her, and told her that she "couldn't get up"); *Hardley v. State*, 893 N.E.2d

1140, 1145 (Ind. Ct. App. 2008), (finding no violation of actual evidence test where defendant slapped victim, who fell on mattress, and defendant thereafter restrained victim on mattress and beat and kicked her), *aff'd on other grounds*, 905 N.E.2d 399 (Ind. 2009).

[33] Affirmed.

[34] Riley, J., and Pyle, J., concur.