## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 27 2017, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gregory S. Powers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 27, 2017

Court of Appeals Case No.
16A01-1707-CR-1525

Appeal from the Decatur Superior Court

The Honorable Matthew D. Bailey, Judge

Trial Court Cause No.
16D01-1605-F4-404

**Bradford, Judge.**

# Case Summary

[1]    In September of 2014, Appellee-Plaintiff the State of Indiana ("the State") charged Appellant-Defendant Gregory S. Powers in connection to an alleged burglary and trespass under Cause Number 16D01-1409-F5-662 ("Cause No. F5-662"). The charges were dismissed on May 15, 2015. Pursuant to the standard operating procedures of the Greensburg Police Department ("GPD"), certain physical evidence relating to Powers's case was destroyed on February 2, 2016.[1] Approximately four months later, on May 23, 2016, the State re-filed charges against Powers under Cause Number 16D01-1605-F4-404. In doing so, the State alleged that Powers had committed Level 4 felony attempted burglary, Level 5 felony burglary, and Class A misdemeanor criminal trespass. The State also alleged the Powers was a habitual offender.[2]

[2]    Prior to the start of trial, Powers moved to dismiss the charges, claiming that State's destruction of certain physical evidence resulted in a violation of his due process rights. The trial court denied Powers's motion and the matter proceeded to trial. After the parties had presented their evidence, Powers requested that the trial court instruct the jury on the alleged lesser-included offense of Class B misdemeanor criminal mischief. The trial court determined that, in this case, Class B misdemeanor criminal mischief did not qualify as a

---

[1] GPD's standard operating procedure is to destroy or discard evidence six months after a case is closed.

[2] The State subsequently dismissed the Level 4 felony attempted burglary charge.

lesser-included offense of the Level 5 burglary charge. The trial court, therefore, did not include Powers's proffered instruction in its final instructions to the jury.

[3] The jury subsequently found Powers guilty of both Level 5 felony burglary and Class A misdemeanor criminal trespass. After receiving the jury's verdict, the State moved to dismiss the habitual-offender allegation. The trial court granted the State's motion and sentenced Powers to an aggregate executed term of 1980 days.

[4] On appeal, Powers contends that the trial court abused its discretion in denying his motion to dismiss. Powers alternatively contends that the trial court abused its discretion in instructing the jury. Because we disagree with both contentions, we affirm.

## Facts and Procedural History

[5] At approximately 1:00 a.m. on September 23, 2014, Greensburg police officers were dispatched to Hoeing Supply. After arriving at Hoeing Supply, officers found that a hole had been cut in the metal siding on the southwest part of Hoeing's building. Upon further inspection, officers discovered that some of the screws that had been holding the siding in place had been removed. In the grass immediately next to the hole, officers found a socket. The socket still contained the head of a screw. The screw head was consistent with the screws attached to the building's siding. One of the responding officers described the

socket as a "bite-down socket[,]" *i.e.*, "a socket that goes onto a nut driver or socket set." Tr. Vol. II, p. 137. The next morning, an employee of Hoeing Supply discovered that someone had entered the building and moved copper tubing and boxes of lights from an area near where the hole was discovered.

[6] As officers were investigating the scene at Hoeing Supply, Officer Jordan Craig patrolled the surrounding area. At some point, he was alerted to an individual walking within a locked gate at a nearby business called American Lift. American Lift had a wire fence that encircled its entire property, a yellow metal gate blocking the road into the business's property, and a posted "No Trespassing" sign. State's Ex. 14. Officer Craig watched as Powers climbed over the wire fence and exited American Lift's property. When Powers noticed Officer Craig, he took off a pair of gloves that he had been wearing and threw the gloves away from him. Powers then started to place his hands in his pockets. After Officer Craig ordered Powers to not place his hands in his pockets, Powers fell to the ground.

[7] Powers gave Officer Craig permission to search his jeans pockets. Officer Craig subsequently found a pair of metal pliers and a "nut driver" in Powers's jean pockets.[3] Tr. Vol II, p. 155. Officer Craig described the "nut driver" as "a handled stud, and on the end of it, you know, you can put a – put a socket on it

---

[3] Officer Craig also observed that Powers was wearing a backpack "turned around backwards[.]" Tr. Vol. II, p. 156.

or, you know, whatever tools. It's the male end that would go into the – you know, whatever tool you're placing on the other." Tr. Vol. II, p. 156.

[8] Shortly after completing his search, Officer Craig learned that the officers investigating the scene at Hoeing Supply had found marks around the hole in the metal siding that appeared to be left by a tool. The marks suggested that a tool, consistent with pliers, had been used to cut through the siding. Upon recovering the gloves that Powers had thrown, Officer Craig discovered that the gloves had paint dust on them consistent with the color of the metal siding at Hoeing Supply. While Officer Craig was collecting the gloves and talking with other officers, Powers threw a set of pliers into nearby tall grass. Officer Craig's K9 companion subsequently recovered the pliers. When asked, Powers indicated that he did not know why he threw the pliers.

[9] In September of 2014, the State charged Powers in connection to the alleged burglary and trespass under Cause No. F5-662. The charges were dismissed on May 15, 2015.

[10] Occasionally, the GPD conducts audits during which investigators "would check cause numbers, case numbers, to see if the cases had been disposed of or dismissed." Tr. Vol. III, p. 8. As "a matter of practice, anything held over 60 days that is no longer evidentiary, we destroy or get rid of it." Tr. Vol. III, p. 7. On February 2, 2016, investigators destroyed certain physical evidence, including the pliers, collected in connection to Cause No. F5-662 because the case had been dismissed for more than sixty days.

[11] Approximately four months later, on May 23, 2016, the State re-filed charges against Powers under Cause Number 16D01-1605-F4-404. In doing so, the State alleged that Powers had committed Level 4 felony attempted burglary, Level 5 felony burglary, and Class A misdemeanor criminal trespass.[4] The State also alleged the Powers was a habitual offender. Powers filed a motion to preserve evidence on November 7, 2016.

[12] On the morning that trial was scheduled to begin, Powers moved to dismiss the charges, claiming that the State's destruction of certain physical evidence resulted in a violation of his due process rights. The trial court conducted a hearing on Powers's motion. At the conclusion of this hearing, the trial court stated the following:

> Very well. We certainly have destruction of evidence here that is negligent. No indicia of any kind of bad faith. I think this evidence that we're talking about today is at best – will be called potentially useful evidence rather than being materially exculpatory evidence. I'm going to deny the motion filed by the Defense on today's date.

Tr. Vol. II, p. 95. The matter then proceeded to trial.

[13] At the close of evidence, Powers requested that the trial court instruct the jury on the alleged lesser-included offense of Class B misdemeanor criminal

---

[4] As is mentioned in footnote 2, the State subsequently dismissed the Level 4 felony attempted burglary charge.

mischief. The trial court determined that under the facts and circumstances of this case, Class B misdemeanor criminal mischief did not qualify as a lesser-included offense of the Level 5 burglary charge. The trial court, therefore, did not include Powers's proffered instruction in its final instructions to the jury.

[14] The jury subsequently found Powers guilty of both Level 5 felony burglary and Class A misdemeanor criminal trespass. After receiving the jury's verdict, the State moved to dismiss the habitual-offender allegation. The trial court granted the State's motion and sentenced Powers to an aggregate executed term of 1980 days. This appeal follows.

# Discussion and Decision

[15] Powers contends that the trial court abused its discretion in denying his motion to dismiss. "We review a trial court's ruling granting a motion to dismiss for an abuse of discretion." *State v. Durrett*, 923 N.E.2d 449, 453 (Ind. Ct. App. 2010) (citing *State v. Fettig*, 884 N.E.2d 341, 343 (Ind. Ct. App. 2008)). "We therefore reverse only where the decision is clearly against the logic and effect of the facts and circumstances." *Id*. (citing *Fettig*, 884 N.E.2d at 343). Powers alternatively contends that the trial court abused its discretion in instructing the jury.

## I. Destruction of Evidence

[16] Powers argues that the charges against him should have been dismissed because State's destruction of certain physical evidence resulted in a violation of his due process rights.

> Criminal defendants have the right to examine physical evidence in the hands of the State under the Fourteenth Amendment to the United States Constitution and Article One, Section Twelve of the Indiana Constitution.[5] *Smith v. State*, 586 N.E.2d 890, 893 (Ind. Ct. App. 1992). However, the State does not have "an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

*Terry v. State*, 857 N.E.2d 396, 406 (Ind. Ct. App. 2006).

[17] When determining whether a defendant's due process rights have been violated by the State's failure to preserve evidence, we must first determine whether the evidence is material exculpatory evidence or potentially useful evidence. *Durrett*, 923 N.E.2d at 453 (citing *Land v. State*, 802 N.E.2d 45, 49 (Ind. Ct. App. 2004), *trans. denied*).

> Evidence is materially exculpatory if it "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Noojin v. State*, 730 N.E.2d 672, 675–76 (Ind. 2000) (quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Exculpatory evidence is defined as "[e]vidence tending to establish a criminal defendant's innocence." Black's Law Dictionary 597 (8th ed. 2004). A prosecutor's duty to preserve exculpatory evidence is ["]limited to evidence that might be expected to play a significant role in the

---

5 As footnote 8 in *Terry* indicated, the analysis under the Indiana Constitution is identical to the federal analysis. 857 N.E.2d at 406 n.8 (citing *Stoker v. State*, 692 N.E.2d 1386, 1390 (Ind. Ct. App. 1998)).

defendant's defense.["] *Noojin*, 730 N.E.2d at 675 (quoting *Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528). Failure to preserve material exculpatory evidence violates due process regardless of whether the State acted in good or bad faith. *Blanchard v. State*, 802 N.E.2d 14, 27 (Ind. Ct. App. 2004) (citing [*Youngblood*, 488 U.S. at 57]).

*Id*. (first two sets of brackets in original, third through fifth sets of brackets added).

[18] Evidence is merely potentially useful if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." [*Blanchard*, 802 N.E.2d] at 26 (citing *Youngblood*, 488 U.S. at 57, 109 S.Ct. 333). The State's failure to preserve potentially useful evidence does not constitute a violation of due process rights unless the defendant shows bad faith on the part of the police. *Id*. at 26–27.

*Id*. (brackets added). "Bad faith is defined as being not simply bad judgment or negligence, but rather implies the conscious doing of wrong because of dishonest purpose or moral obliquity." *Land*, 802 N.E.2d at 49 (internal quotations omitted).

[19] Powers argues that the pliers were materially exculpatory evidence. Again, evidence is materially exculpatory if it (1) possesses exculpatory value that is apparent before the evidence was destroyed *and* (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *See Durrett*, 923 N.E.2d at 453. Powers does not argue that the pliers at issue in this case were rare or distinctive. Rather the pliers seem to have been similar to, if not the same as, other pliers that are readily available for

purchase at any number of home improvement stores. In fact, during trial, Powers's counsel provided one of the investigating officers with a pair of pliers. Powers's counsel asserted and the officer agreed that the pliers were similar to those found at the crime scene on the night in question. Powers's counsel then asked the officer to use the supplied pliers to try to cut a piece of metal siding, like that cut on the night in question. The officer was able to cut through the piece of metal siding.

[20] Further, despite Powers's claim to the contrary, we do not believe that all of the pictures of the pliers were of such poor quality that the trier-of-fact was unable to discern the size and condition of the pliers. While some of the pictures of the pliers are slightly blurry, others are not and clearly depict the size and condition of the pliers. These pictures show that the pliers appeared to be in a relatively normal condition for pliers. Nothing about these pictures would support an inference that the pliers, unlike the ones presented during trial, could not be used to cut through metal siding.

[21] Exculpatory evidence is evidence which tends to establish a criminal defendant's innocence. *Id.* The record reveals that Powers was able to obtain comparable evidence by other reasonably available means.[6] In addition, there

---

[6] This fact distinguishes the instant matter from *Roberson v. State*, 766 N.E.2d 1185 (Ind. Ct. App. 2002). In *Roberson*, the evidence in question was a handmade allegedly dangerous device that had been fashioned out of two wooden sticks, which were described as being "similar to a tongue depressor[.]" 766 N.E.2d at 1186. The only photograph of the allegedly dangerous device was "of poor quality." *Id.* Noting the critical importance of the evidence in question, this court concluded that "[t]he testimony regarding the device is absolutely crucial and determinative, as there is no independent evidence except for one blurry photograph" and "the character of the device is the sole basis of Roberson's defense." *Id.* at 1188. The court further

was nothing specific about the pliers themselves that, without more, would tend to establish Powers's guilt or innocence. At most, the pliers could have been subjected to testing which might have exonerated Powers. In fact, Powers's counsel was able to perform such a test with the similar replacement pliers during trial. The result of that test did not exonerate Powers, as it was revealed that the pliers were capable of cutting through the metal siding. We therefore conclude that the pliers were not materially exculpatory.

[22] Given our conclusion that the pliers were not materially exculpatory, Powers must demonstrate that the State's failure to preserve the evidence was in in bad faith. We have held that "[t]he mere assertion that the circumstances suggest bad faith is not sufficient to establish that the State acted in bad faith." *Terry*, 857 N.E.2d at 408. "Instead, a defendant must show that the State failed to preserve the evidence pursuant to a 'conscious doing of wrong because of dishonest purpose or moral obliquity.'" *Id.* (quoting *Land*, 802 N.E.2d at 51).

[23] The circumstances here do not point to bad faith on the part of the State. The pliers were destroyed pursuant to the established procedures of the GPD. William Meyerrose assisted with the audit which led to the destruction of the pliers. As part of the audit, Meyerrose "would check cause numbers, case numbers, to see if the cases had been disposed of or dismissed. Specifically, this cause number when it was originally filed was [Cause No. F5-662], and

concluded that "[u]nder the specific circumstances of this case, we hold that it would be fundamentally unfair and a violation of due process to allow the State to proceed in this manner." *Id.* at 1190.

[Meyerrose] found that it had been dismissed on May 15th, 2015." Tr. Vol. III, p. 8. Meyerrose testified that as "a matter of practice, anything held over 60 days that is no longer evidentiary, we destroy or get rid of it." Tr. Vol. III, p. 7. Meyerrose further testified that this practice is in compliance with "the statutes regarding the retention of evidence[.]" Tr. Vol. III, p. 8. Because the case had been dismissed for more than sixty days, the pliers were destroyed on February 2, 2016.[7] Powers has not presented any evidence indicating that, as of the date of the destruction of the pliers, Meyerrose knew that the State would subsequently re-file the criminal charges. Powers, therefore, has not demonstrated that the pliers were destroyed in bad faith. Because Powers has not demonstrated that the State destroyed the pliers in bad faith, he has not demonstrated a violation of his due process rights. As such, the trial court did not abuse its discretion in denying Powers's motion to dismiss.

## II. Jury Instructions

[24] Powers alternatively claims that the trial court should have included an instruction relating to the alleged lesser-included crime of criminal mischief in its instructions to the jury.

> When a party requests a trial court to instruct a jury on a lesser included offense of a charged crime, the court must perform a three part analysis. *Wright v. State*, 658 N.E.2d 563, 566 (Ind. 1995). First, it must determine whether the alleged lesser included offense is inherently included in the greater offense. *Id*.

---

[7] The State did not re-file charges against Powers until May 23, 2016.

An offense is inherently included if (a) the alleged lesser included offense may be established by proof of the same material elements or less than all the material elements defining the crime charged, or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the lesser offense. *Id*. Second, if an offense is not inherently included, then the court must determine whether the offense is factually included by comparing the charging instrument to the statute defining the alleged lesser included offense. *Id*. at 567.

Third, if an offense is either inherently or factually included within a greater offense, then the court must look at the evidence presented in the case by both parties and determine whether there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense. *Id*. If there is such a dispute, such that a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. *Id*. "If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction." *Id*. When the propriety of giving a lesser included offense instruction turns on the existence or not of a serious evidentiary dispute, and the trial court has made an express finding on the existence or lack of such a dispute, our standard of review for a lesser included offense instruction is abuse of discretion. *Charlton v. State*, 702 N.E.2d 1045, 1048 (Ind. 1998). If a trial court makes no explicit finding regarding a serious evidentiary dispute, we review the ruling de novo. *Wilkins v. State*, 716 N.E.2d 955, 957 (Ind. 1999).

*True v. State*, 954 N.E.2d 1105, 1108 (Ind. Ct. App. 2011).

[25] Powers does not argue that the crime of criminal mischief is inherently included in the crime of burglary. Instead, he argues that the crime of criminal mischief is factually included in the crime of burglary. In support, Powers cites to our opinion in *Moore v. State*, 427 N.E.2d 1135, 1140 (Ind. Ct. App. 1981), in which we noted the following:

> While under the circumstances of a particular case criminal mischief may constitute a lesser included offense to the acts constituting a burglary, it does not necessarily do so. The elements of burglary are breaking and entering with intent to commit a felony. The essence of criminal mischief is the reckless, or perhaps knowing or intentional … damaging of another's property. Burglary may or may not involve such damage.

(internal citations omitted).

[26] The Indiana Supreme Court has held that the State may foreclose instruction on a factually included offense by omitting from the charging information factual allegations necessary to charge the lesser offense. *See Wright*, 658 N.E.2d at 570 (providing that "the State may only foreclose instruction on a lesser offense that is not inherently included in the crime charged by omitting from a charging instrument factual allegations sufficient to charge the lesser offense."). The Indiana Supreme Court has explained that "[d]etermining whether a charging information fairly encompasses a particular lesser offense is vital to both sides of a criminal case because it affects 'both how prosecutors draft indictments and informations and what notice defendants … will have of the charges brought

against them.'" *Young v. State*, 30 N.E.3d 719, 723 (Ind. 2015) (quoting *Wright*, 658 N.E.2d at 565).

[27] In this case, criminal mischief was not factually included in the burglary allegation as drafted. Indiana Code section 35-43-1-2(a) provides that "[a] person who recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent commits criminal mischief, a Class B misdemeanor." The charging information alleged that Powers "[b]roke and entered break and enter [sic] Hoeing Supply, with the intent to commit theft in it[.]" Appellant's App. Vol. II–Confidential, p. 13. The charging information made no mention of any damage to Hoeing Supply's property. Thus, the State omitted from the charging information factual allegations sufficient to charge the crime of Class B misdemeanor criminal mischief. Given the fact that the State omitted any factual allegations "sufficient to charge" the crime of Class B misdemeanor criminal mischief from the charging information, the crime did not qualify as a factually included offense in this matter. *See Wright*, 658 N.E.2d at 570. The trial court, therefore, did not abuse its discretion in excluding an instruction relating to criminal mischief from its final instructions to the jury.

[28] The judgment of the trial court is affirmed.

Robb, J., and Crone, J., concur.